Below is an opinion of the court.

_____
PETER C. McKITTRICK
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In Re:<br>DEWO MEBRAT YADETO,<br>        Debtor. | Bankruptcy Case<br>No. 20-30095-pcm7 |
| DEWO MEBRAT YADETO,<br>        Plaintiff,<br>   v.<br>THE STANDARD INSURANCE,<br>        Defendant. | Adv. Proc. No. 20-3044-pcm<br><br>MEMORANDUM OPINION[1] |

This matter came before the bankruptcy court on the motion for summary judgment filed by The Standard Insurance Company ("Standard"). Standard contends that future payments to Dewo Yadeto under a group long term disability insurance policy are subject to equitable recoupment.

---

[1] This disposition is specific to this case and is not intended for publication or to have a controlling effect on other cases. It may, however, be cited for whatever persuasive value it may have.

Page 1 – MEMORANDUM OPINION

For the reasons set forth below, I will grant Standard's motion for summary judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Yadeto was in a car accident on February 26, 2016.[2] (Doc. 19). At the time of the accident, Yadeto was employed by the State of Oregon as a Mental Health Therapy Technician. (Doc. 19). Yadeto is a beneficiary under a Group Long Term Disability Insurance Plan ("LTD Policy") administered by Standard for the benefit of employees of the State of Oregon through its Public Employees' Benefit Board. (Doc. 20, Ex. 1).

Under the LTD Policy, Yadeto was entitled to receive monthly payments ("LTD Benefits") in an aggregate amount of 66 2/3% of his pre-disability earnings, "reduced by Deductible Income." (Doc. 20, Ex. 1). As defined in the LTD Policy, "Deductible Income" includes any amount that Yadeto was eligible to receive because of his disability under the Federal Social Security Act, including Social Security Disability Income ("SSD"). (Doc. 20, Ex. 1). The LTD Policy provides: "[The beneficiary] must notify [Standard] of the amount of the Deductible Income when it is approved. [The beneficiary] must repay [Standard] for the resulting overpayment of [the beneficiary's] claim." (Doc. 20, Ex. 1).

Yadeto filed a claim ("LTD Claim") under his LTD Policy and signed a Repayment Agreement. (Doc. 19). The Repayment Agreement states:

---

[2] The following recitation of facts is set out in Standard's Concise Statement of Material Facts and supported by a Declaration of Mike Dalby, a Benefits Review Specialist at Standard. (Doc. 20). Because Yadeto has not disputed those facts, they are deemed admitted. LBR 7056-1(f).

Page 2 – MEMORANDUM OPINION

"I understand that my receiving or being eligible to receive Deductible Income may result in an overpayment of LTD benefits. I agree to immediately repay The Standard for any such overpayment." (Doc. 20, Ex. 2). The Repayment Agreement also states: "I understand that I am responsible for sending copies of all applications, notices, awards, or letters I receive to The Standard. I agree to notify The Standard immediately if I receive other income or benefits." (Doc. 20, Ex. 2).

On March 10, 2019, the Social Security Administration ("SSA") issued a Notice of Award ("the Notice") indicating that it determined Yadeto became disabled on January 19, 2017. (Doc. 19). Because the SSA issued its determination two years after Yadeto became disabled, the Notice provided that Yadeto would receive back payments of $910.10 per month for the period from July 2017 to November 2017, $928.30 per month for the period from December 2017 to November 2018, and $954.20 per month from December 2018 forward. (Doc. 20, Ex. 3). Standard received a complete copy of the Notice in June 2019. (Doc. 19). Once Standard received the Notice, it calculated an overpayment of $20,596.30 in benefits to Yadeto. (Doc. 19).

At the time of Standard's calculation, Yadeto had a pending chapter 13 case.[3] (Doc. 19). Standard sent a notice to Yadeto through his attorney on June 24, 2019, notifying him of the overpayment and reduction of benefits. (Doc. 20, Ex. 4). The court dismissed Yadeto's chapter 13 bankruptcy on September 10, 2019. (Case No. 19-31603-tmb13).

---

[3] Unless otherwise noted, all references to chapters, sections, and rules are to the Bankruptcy Code, 11 U.S.C. § 101, et seq., and to the Federal Rules of Bankruptcy Procedure, Rules 1001, et seq.

Page 3 – MEMORANDUM OPINION

Yadeto filed a chapter 7 bankruptcy petition on January 12, 2020. Standard sent a letter to Yadeto regarding the overpayment and reduction of benefits, noting the overpayment balance had increased to $27,959.07. (Doc. 20, Ex. 5). The chapter 7 bankruptcy was a no-asset case and Yadeto received a discharge on April 7, 2020. (Doc. 19).

Yadeto filed the complaint in this adversary proceeding on April 20, 2020. It is not entirely clear from the complaint the relief that Yadeto seeks, but the court believes that Yadeto wants a determination that Standard may not recoup its overpayment from his future disability payments under the LTD Policy. (Doc 1). Yadeto alleged in his complaint that he is disabled, has been unable to work since 2014, and receives social security disability in the amount of $913.00 for himself and $38.00 for each of his four children. (Doc. 1). Yadeto indicates that he has no other income to pay Standard and requests relief from Standard withholding his LTD Benefits after his bankruptcy has been discharged. (Doc 1).

Standard filed a motion for summary judgment, seeking a determination that its recovery of the overpayment is subject to equitable recoupment against future payments owed to Yadeto under the LTD Claim. (Doc. 19).

## LEGAL STANDARD AND ANALYSIS

This court has jurisdiction to decide this matter pursuant to 28 U.S.C. § 1334 and 157(b)(2)(I). A court should grant summary judgment, "if the movant shows that there is no genuine dispute as to any material

Page 4 – MEMORANDUM OPINION

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), made applicable by Fed. R. Bankr. P. 7056.

The movant has the burden of establishing that there is no disputed issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In determining whether to grant summary judgment, the court views all facts and reasonable inferences drawn from the record in the light most favorable to the party opposing the motion. Horphag Research Ltd. v. Pellegrini, 337 F.3d 1036, 1040 (9th Cir. 2003).

The primary inquiry is whether the evidence presents a sufficient disagreement to require a trial, or whether it is so one-sided that one party must prevail as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A party opposing a properly supported motion for summary judgment must present affirmative evidence of a disputed material fact from which a fact finder might return a verdict in its favor. Anderson, 477 U.S. at 257.

"Equitable recoupment is a common law doctrine that is not expressly recognized in the Bankruptcy Code, but is preserved through judicial decisions." In re Madigan, 270 B.R. 749, 753 (B.A.P. 9th Cir. 2001) (citing 5 COLLIER ON BANKRUPTCY ¶. 553.10 (15th ed. rev. 2001)). Recoupment is distinguished from setoff, "a similar equitable doctrine of debt adjustment, governed by § 553, which requires the existence of mutual, prepetition debts." In re Madigan, 270 B.R. at 754 (emphasis in original).

Page 5 – MEMORANDUM OPINION

"Recoupment operates as an exception to the requirements of the automatic stay" because when the bankruptcy trustee takes estate property, it takes that property subject to any right of recoupment. In re Bram, 179 B.R. 824, 827 (Bankr. E.D. Tex. 1995).

> The justification for the defensive use of recoupment in bankruptcy is that there is no independent basis for a "debt," and therefore there is no "claim" against estate property. [In re Harmon, 188 B.R. 421, 425 (B.A.P. 9th Cir. 1995); 11 U.S.C.] § 101(5) (claim is a "right to payment" or "right to an equitable remedy"); § 101(12) ("'debt' means liability on a claim"). Since recoupment is neither a claim nor a debt, it is unaffected by either the automatic stay or the debtor's discharge.

In re Madigan, 270 B.R. at 754.

Recoupment claims "may arise either before or after the commencement of the bankruptcy case, but they must arise out of the same transaction." In re Madigan, 270 B.R. at 754 (citing Newbery Corp. v. Fireman's Fund Ins. Co., 95 F.3d 1392, 1399 (9th Cir. 1996)). Under recoupment, a creditor may assert that mutual claims extinguish one another, even though the claims cannot not be setoff under § 553.

"Although an express contract is not necessary for the application of recoupment, courts often find that the 'same transaction' requirement is satisfied when corresponding liabilities arise under a single contract." In re Madigan, 270 B.R. at 758. The rationale for allowing recoupment where the parties have mutual obligations under a contract is that it would be inequitable for the debtor to enjoy the benefits of a transaction without also meeting his obligations. In re Madigan, 270 B.R. at 758 (citing Newbery Corp., 95 F.3d at 1403).

Page 6 – MEMORANDUM OPINION

"Recoupment is the common law precursor of the compulsory counterclaim." In re Madigan, 270 B.R. at 755. The Ninth Circuit has adopted the same "logical relationship" test that is applicable in determining whether a counterclaim is compulsory under Fed. R. Civ. P. 13(a) to determine whether equitable recoupment applies to corresponding liabilities between a debtor and creditor. In re Madigan, 270 B.R. at 755.

> A logical relationship exists when the counterclaim arises from the same aggregate set of operative facts as the initial claim, in that the same operative facts serve as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights otherwise dormant in the defendant.

In re Madigan, 270 B.R. at 755 (citing In re Pinkstaff, 974 F.2d 113, 115 (9th Cir. 1992)).

In applying the logical relationship test in equitable recoupment cases, "courts have permitted a variety of obligations to be recouped against each other, requiring only that the obligations be sufficiently interconnected so that it would be unjust to insist that one party fulfill its obligation without requiring the same of the other party." In re Madigan, 270 B.R. at 755. The term "transaction" is given a liberal and flexible construction, and may comprehend a series of many occurrences, "depending not so much upon the immediateness of their connection as upon their logical relationship." In re Madigan, 270 B.R. at 755 (citing Moore v. New York Cotton Exch., 270 U.S. 593, 610, 46 S. Ct. 367, 70 L. Ed. 750 (1926)).

Page 7 – MEMORANDUM OPINION

Standard's right to equitable recoupment for overpayment of benefits arises from the same aggregate set of operative facts as Yadeto's right to future payment under the LTD Policy, satisfying the logical relationship test. Yadeto entered a contract with Standard and agreed that, if he received SSD benefits, he would repay Standard for any overpayment. Yadeto received SSD benefits but failed to repay Standard. The same LTD Policy, LTD Claim, and Repayment Agreement govern the parties' respective contractual obligations.

In re Bram supports this court's analysis and conclusion. 179 B.R. at 827. There, the debtor applied for long-term disability benefits under an Aetna insurance plan and executed a reimbursement agreement. In re Bram, 179 B.R. at 825. Subsequently, the debtor received SSD benefits. In re Bram, 179 B.R. at 825-26. Aetna suspended payments and the debtor filed a chapter 7 bankruptcy petition. In re Bram, 179 B.R. at 826. The bankruptcy court ruled in favor of Aetna and held that, under the plan and the reimbursement agreement, the contractual benefits and burdens were part of a single transaction and therefore, Aetna's right to recover its overpayment constituted recoupment and could not be discharged by the debtor. In re Bram, 179 B.R. at 827.

The facts here are the same, in all material aspects, to those in Bram. The prepetition overpayment and the postposition LTD Benefits arise from contractual rights under the LTD Policy and Repayment Agreement, thereby constituting a single transaction. Thus, a logical relationship exists between the prepetition overpayment and the post-petition LTD Benefits.

Page 8 – MEMORANDUM OPINION

At first glance, In re Madigan does not appear to support Standard's assertions. However, upon further inspection, Madigan is consistent with the outcome here because the facts of that case are distinguishable from those presented here. In Madigan, the Bankruptcy Appellate Panel for the Ninth Circuit concluded that Aetna was not able to recoup overpayment of its long-term disability payments to Madigan because there were two separate claims and claim periods and therefore Aetna failed to prove that its right to recoupment arose from the same aggregate set of operative facts as the disability claim. 270 B.R. at 749. Since there were two disability claims, Aetna could not recoup an overpayment of the first disability claim from the disability payments due under the second claim. In re Madigan 270 B.R. at 749.

From 1996 until 1997, Madigan received LTD benefits for his first disability claim. In re Madigan, 270 B.R. at 751. In June 1997, Madigan received a lump sum payment from SSA but did not tell Aetna that he received those benefits. In re Madigan, 270 B.R. at 751–52. In August 1997, Madigan returned to work and Aetna terminated the LTD Benefits. In re Madigan, 270 B.R. at 752. Aetna also demanded a payment of $15,630.24 for its overpayment of benefits. In re Madigan, 270 B.R. at 752. In November 1997, Madigan filed chapter 7 bankruptcy, listed Aetna as an unsecured creditor, explained that he used the SSD benefits to pay his debts, and received a discharge in 1998. In re Madigan, 270 B.R. at 752.

In November 1999, Madigan filed a second claim for LTD Benefits and from 1999 through 2000 received adjusted LTD Benefits. In re Madigan,

Page 9 – MEMORANDUM OPINION

270 B.R. at 752.  Aetna approved benefits for Madigan, effective November 1999, but Madigan did not begin receiving reduced payments until April 2000.  In re Madigan, 270 B.R. at 752.  Aetna kept the benefit payments from November 1999 through March 2000 to recoup the past overpayment and planned to pay Madigan a reduced benefit until it recouped the full $15,630.24.  In re Madigan, 270 B.R. at 752.

In November 2000, Madigan filed a motion to reopen his bankruptcy case and filed a complaint against Aetna for violating the § 524 discharge injunction.  In re Madigan, 270 B.R. at 752.  Aetna responded that it was entitled to equitable recoupment.  In re Madigan, 270 B.R. at 752.  The court held that the policy's language created separate disability claims when six months had passed between the two claim periods.  In re Madigan, 270 B.R. at 753.  Thus, the overpayment for the first disability claim was not "logically related" to Aetna's reimbursement rights under the second disability claim, and therefore the "same transaction" requirement for equitable recoupment was not met. In re Madigan, 270 B.R. at 753.  In addition, the court concluded that two reimbursement agreements were executed by the parties, further supporting its conclusion that the two claims did not arise out of the same operative facts.  In re Madigan, 270 B.R. at 752.

Unlike in Madigan, Standard is seeking to recoup overpayment from future LTD Benefits under the same LTD Claim.  Therefore, recouping the overpayment is logically related to the future benefits due to Yadeto under the LTD Policy.

Page 10 – MEMORANDUM OPINION

CONCLUSION

There is no dispute of material fact and Standard is entitled to summary judgment. For the reasons stated above, Standard has met its burden on summary judgment and has shown that it is entitled to recoup its overpayment.

Counsel for Standard should submit an order granting summary judgment and a judgment within 14 days.

###

cc: Dewo Mebrat Yadeto